UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON YOUNGS, #229558,

                Petitioner,

v.                                CASE NO. 2:18-CV-11629
                                HONORABLE PAUL D. BORMAN

RANDEE REWERTS,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I.    Introduction

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Jason Youngs ("Petitioner") was convicted of first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), and unarmed robbery, MICH. COMP. LAWS § 750.530, following a jury trial in the Shiawassee County Circuit Court. He was sentenced, as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to consecutive terms of 16 years 8 months to 41 years 8 months and 11 years 8 months to 41 years 8 months imprisonment on those convictions in 2015. In his pleadings, Petitioner raises claims concerning the right to counsel, the conduct of the prosecutor, and the effectiveness of counsel. For the reasons set forth herein, the Court denies the

petition for a writ of habeas corpus.  The Court also denies a certificate of

appealability and denies Petitioner leave to proceed in forma pauperis on appeal.

## II.   <u>Facts and Procedural History</u>

Petitioner's convictions arise from a home invasion and attempted robbery at

the home of Robert Lacina in Ovid, Shiawassee County, Michigan on October 27,

2014.  The Michigan Court of Appeals described the underlying facts, which are

presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*,

581 F.3d 410, 413 (6th Cir. 2009), as follows:

> The jury convicted Youngs of breaking into the home of Robert Lacina
> in Ovid, Michigan, on October 27, 2014, and then assaulting Lacina
> when Lacina returned to the home while Youngs was still there. The
> prosecutor's theory at trial was that Youngs planned the offense with
> Jamie Rummell, who was Youngs's ex-wife or girlfriend and Lacina's
> employee.
>
> Rummell testified at trial pursuant to a plea agreement. She stated that
> she and Youngs planned for Youngs to break into Lacina's house and
> steal his property while she accompanied Lacina on a trip to AuGres,
> Michigan to winterize a trailer there. While Rummell and Lacina were
> gone, Rummell sent text messages to Youngs informing him of their
> location and expected return. Evidence suggested that Youngs may not
> have received Rummell's text messages because he had turned off his
> cell phone to prevent it from being linked to the vicinity of Lacina's
> home at the time of the offense. When Lacina and Rummell arrived at
> Lacina's house, Rummell saw Youngs's truck still in the driveway.
> Lacina began to enter his house, but was assaulted by a person who was
> inside. According to Lacina, the assailant repeatedly hit him, knocked
> him down, and then kicked him in the face and head. Lacina's teeth were
> broken during the assault. The assailant then entered the red truck in the
> driveway and drove away.

After the intruder left, Lacina discovered that a door to his home had been ripped off its frame and his bedroom had been ransacked. In addition, a safe that had been hidden was on the floor and had been opened. Lacina did not notice anything missing, but at Rummell's suggestion he initially told the police that $5,000 had been taken from his house. Lacina later admitted to the police that nothing had been stolen.

After the offense, the police attempted to locate Youngs through his parole officer, Brian Stevens. When Youngs subsequently met with Stevens, Youngs uncharacteristically was not carrying his cell phone and said that he had left it at a job site. Additionally, Youngs was not driving his red truck and said it had broken down. Stevens provided Youngs with the contact information for the detective who wanted to speak to him. Youngs said he would call the detective, but never did. Youngs was later arrested and incarcerated for absconding from his parole. While in jail, he was incarcerated with Lakendrik Willis. At trial, Willis testified that Youngs admitted his involvement in the break-in and assault at Lacina's house. Willis provided detailed information about the offense and Youngs's efforts to avoid detection, which he claimed he learned from Youngs.

At trial, Youngs's lawyer suggested that Lacina collaborated with Rummell to plan the home invasion and commit insurance fraud and that, with Willis's help, the two were now attempting to place the blame on Youngs to get themselves out of trouble. As noted above, the jury found Youngs guilty of first-degree home invasion and armed robbery.

*People v. Youngs*, No. 328969, 2017 WL 430234, *1-2 (Mich. Ct. App. Jan. 31, 2017) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising several claims of error, including the claims presented on habeas review.  The court denied relief and affirmed Petitioner's

3

convictions and sentences. *Id.* at pp. 2-9. Petitioner filed an application for leave to

appeal with the Michigan Supreme Court, which was denied in a standard order.

*People v. Youngs*, 501 Mich. 862, 901 N.W.2d 100 (2017).

Petitioner thereafter filed his federal habeas petition raising the following

claims:

I.    The trial court violated his right to the effective assistance of counsel in violation of the Sixth Amendment when it precluded any further plea negotiations prior to the appointment of substitute counsel.

II.    The prosecutor engaged in substantial misconduct that denied him a fair trial in violation of the United States Constitution's Fourteenth Amendment Due Process Clause where he utilized the perjured testimony of Lakendric Willis, and knowingly and materially misled the jury in closing argument concerning the source of Mr. Willis's information.

III.    He was denied the effective assistance of counsel and a fair trial in violation of the Sixth and Fourteenth Amendment to the United States Constitution where appointed counsel:

    a.    made an indefensible mid-trial strategy change that included his opening statement promise to the jury of defendant's testimony;

    b.    endorsed the testimony of Lakendric Willis in opening statement and failed to destroy his credibility with documentary evidence;

    c.    acquiesced with the prosecution striking witnesses critical to the defense;

    d.    failed to investigate and produce testimony and

evidence vital to the defense;

e.      knowingly permitted the State's use of perjured
        testimony that violated evidentiary rules and
        defendant's right to due process and failed to respond
        to material misrepresentations;

f.      failed to request "disputed accomplice" and "mistake
        of fact" jury instructions.

Respondent has filed an answer to the habeas petition contending that it should be

denied because the first two claims are procedurally defaulted and all of the claims

lack merit.

## III.   <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal

courts must use when considering habeas petitions brought by prisoners challenging

their state court convictions.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law, as
>         determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in
>         the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7);

*Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of

possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly

established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Analysis

### A. Procedural Default

As an initial matter, Respondent contends that Petitioner's first and second habeas claims are barred by procedural default. The Court declines to address this defense. Procedural default is not a jurisdictional bar to habeas review. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding

9

against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.

2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The Supreme Court

has explained the rationale behind such a policy:  "Judicial economy might counsel

giving the [other] question priority, for example, if it were easily resolvable against

the habeas petitioner, whereas the procedural-bar issue involved complicated issues

of state law."  *Lambrix*, 520 U.S. at 525.  Such is the case here.  The procedural issue

is complex and the substantive claims are more readily decided on the merits.

Accordingly, the Court shall proceed to the merits of Petitioner's habeas claims.

### B.    Merits

#### 1.    Right to Counsel Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court

violated his right to counsel by requiring him to consider whether to accept or reject

a plea offer before appointing new counsel and giving him the opportunity to consult

with new counsel about the plea offer.  Respondent contends that this claim is barred

by procedural default and that it lacks merit.

The Sixth Amendment to the United States Constitution provides for the right

to counsel in criminal prosecutions.  U.S. CONST. AMEND. VI.  Consequently, a

criminal defendant has a right to counsel during the critical stages of his or her

criminal proceedings.  *See, e.g., Bell v. Cone*, 535 U.S. 685, 695-96 (2002); *Roe v.*

*Flores-Ortega*, 528 U.S. 470, 483 (2000); *United States v. Cronic*, 466 U.S. 648, 659 (1984); *United States v. Wade*, 388 U.S. 218, 227 (1967); *see also Van v. Jones*, 475 F.3d 292, 311-12 (6th Cir. 2007). The right to counsel encompasses the right to counsel of choice, but that right is generally cognizable only to the extent that a defendant can retain counsel with private funds; an indigent defendant does not have an absolute right to choose appointed counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).

The complete denial or absence of counsel at a critical stage of the proceedings is a *per se* Sixth Amendment violation which mandates a presumption of prejudice and is generally not subject to harmless error review. *See Holloway v. Arkansas*, 435 U.S. 475, 489 (1978) (ruling that reversal is automatic when a defendant is denied counsel during a critical stage or throughout the prosecution of a capital offense); *see also Cronic*, 466 U.S. at 659-60; *Van*, 475 F.3d at 312. A partial denial of counsel or the absence of counsel at a non-critical stage of the proceedings, however, is not such a structural error. Rather, such a trial-type error requires an inquiry into the prejudicial effect and/or harmlessness of the error. *Satterwhite v. Texas*, 486 U.S. 249, 256-58 (1988); *Rushen v. Spain*, 464 U.S. 114, 117-18 (1983); *Coleman v. Alabama*, 399 U.S. 1, 11 (1970); *Wade*, 388 U.S. at 239-40; *Hereford v. Warren*, 536 F.3d 523, 532-33 (6th Cir. 2008).

The Michigan Court of Appeals reviewed this claim for plain error and denied

relief.  The court explained:

> We disagree with Youngs's claim that by requiring him to decide
> whether to accept or reject the plea offer before appointing a new
> lawyer, the trial court effectively denied him the representation of a
> lawyer at the "critical juncture" of determining whether to accept or
> reject the plea offer. Although Youngs's then appointed lawyer
> expressed his reluctance to proceed if Youngs was displeased with him,
> he repeatedly stated that he was willing to continue as Youngs's lawyer
> and was prepared for trial. He also continued to represent Youngs until
> Youngs made his choice whether to accept or reject the plea offer.
> Additionally, in conjunction with the trial court, Youngs's original
> lawyer advised Youngs of the terms of the plea offer, including the
> benefits of the offer compared to the risks of proceeding to trial. In
> particular, Youngs was informed that the plea offer would entitle him to
> be sentenced within a defined sentence range and receive concurrent
> sentences, whereas if he was convicted at trial he would likely be
> subject to a higher sentencing guidelines range and would be subject to
> consecutive sentencing. Youngs, therefore, was not without a lawyer at
> the time he was required to accept or reject the plea offer.
>
> Moreover, Youngs has not shown, or even argued, that a new lawyer
> could have provided any additional information or advice about the
> proposed plea offer that his then existing lawyer had not already
> provided. Although Youngs argued during trial that his former lawyer
> had not communicated with him concerning discovery, Youngs never
> made this complaint about his lawyer during any of the plea
> discussions. The record of the plea discussions reflects that there were
> extensive discussions about the possible risks if Youngs were to forego
> the plea agreement, and the benefits of the plea offer, such as not having
> to worry about the possibility of serving consecutive sentences and a
> reduction of the sentencing guidelines range. In addition, Youngs has
> not provided any evidence that a new lawyer would have reasonably
> been likely to obtain a more favorable plea offer. We note that both the
> trial court and the prosecutor had repeatedly rejected Youngs's attempts
> to renegotiate the plea to provide for a hard sentencing cap. Moreover,

the trial court had expressed its unwillingness to consider additional
plea offers because the normal time for accepting a plea agreement had
already expired at the time of the plea discussions.

In light of all of these reasons, Youngs has failed to establish a plain
error affecting his substantial rights with respect to this issue.

*Youngs*, 2017 WL 430234 at *5.

The state court's decision is neither contrary to Supreme Court precedent nor
an unreasonable application of federal law or the facts.[1]  First, Petitioner was not
deprived of counsel during a critical stage of his criminal proceedings.  Rather, the
record shows that Petitioner was represented by existing counsel during the plea
negotiations and during the hearing when the trial court required him to decide
whether to accept or reject the plea offer.  Existing counsel was not excused from
service until after Petitioner made his decision to reject the plea offer and to proceed
with a trial.  *See* 4/24/15 Hrg. Tr., pp. 5-17; ECF No. 7-4, PageID.261-273.

Second, the fact that Petitioner was dissatisfied with existing counsel's
performance does not mean that he was constructively without counsel during the
plea proceedings and the hearing.  As the Supreme Court has explained, "in
evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the
adversarial process, not on the accused's relationship with his lawyer as such.'"

---

[1]Petitioner contends that the Court should review this claim de novo because the
Michigan Court of Appeals did not cite federal cases in ruling on this claim.  It is well-settled,
however, that a state court need not cite federal law to have decided the merits of a federal claim.
*See, e.g., Early*, 537 U.S. at 8; *Davis v. Johnson*, 661 F. App'x 869, 876 (6th Cir. 2016).

*Wheat v. United States*, 486 U.S. 153, 159 (1988) (quoting *Cronic*, 466 U.S. at 657 n. 21); *see also Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (confirming that *Cronic*'s presumption of prejudice only applies when counsel is totally absent during a critical stage of the proceedings); *Morris v. Slappy*, 461 U.S. 1, 13 (1983) (a defendant has no legal right to a meaningful attorney-client relationship – only the right to an effective advocate).  While Petitioner may have been dissatisfied with counsel's conduct, he fails to show that there was a complete denial of counsel at this stage of the proceedings.  *Cronic* does not apply to this claim.

Lastly, Petitioner fails to show that he was prejudiced by the Court's requirement that he make a decision about the plea offer while represented by existing counsel rather than substitute counsel (who would be appointed for trial).  A criminal defendant does not have a right to be offered a plea bargain or a right to have a judge accept it.  *Lafler v. Cooper*, 566 U.S. 156, 168 (2012) (citing *Frye v. Missouri*, 566 U.S. 134 (2012)); *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).  The trial court in this case gave Petitioner ample opportunity to consider the plea offer.  *See* ECF No. 7-3, 7-4.  The record indicates that the prosecutor and existing counsel advised Petitioner about the plea offer, and that the trial court and existing counsel ensured that Petitioner understood the consequences of accepting or rejecting that plea offer.  *See* ECF No. 7-3, PageID.249-250; ECF No. 7-4,

PageID.259-266.  Moreover, Petitioner does not indicate what more substitute counsel could have done to assist him in better understanding his options about the existing plea bargain or in obtaining a more favorable one.  Conclusory allegation are insufficient to warrant habeas relief.  *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review).  Petitioner thus fails to establish that the trial court's action deprived him of his right to the effective assistance of counsel during the plea process.  *See, e.g., Strickland v. Washington*, 466 U.S. 668 (1984), discussed *infra*. Habeas relief is not warranted on this claim.

### 2.    Prosecutorial Misconduct Claims

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by using allegedly false/perjured testimony from Lakendric Willis and by misleading the jury in closing argument concerning the source of Willis' information by stating that Willis could have only obtained the information from Petitioner.  Respondent contends that these claims are barred by procedural default and that they lack merit.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)*; Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *see also Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard).

Additionally, the Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972). It is thus well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the

16

statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false. *Coe*, 161 F.3d at 343. A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury. *Napue*, 360 U.S. at 270.

The Michigan Court of Appeals reviewed these claims for plain error and denied relief. The court explained:

> Youngs first argues that the prosecutor committed misconduct by permitting Willis to falsely testify that he did not receive any information about the break-in from either his girlfriend, Tawny Felzke, or her brother, Jerry Felzke, and by then misleading the jury into believing that Willis's knowledge of the offense came solely from Youngs. It is a violation of due process for the prosecutor to knowingly use false testimony to obtain a conviction or to allow testimony that the prosecutor knows is false to stand uncorrected. *People v. Herndon*, 246 Mich. App. 371, 417; 633 N.W.2d 376 (2001). However, it is not apparent from the record that Willis committed perjury. The prosecutor elicited that Willis had spoken to Tawny Felzke about Youngs, but Willis denied that Tawny provided him with the detailed information that he provided at trial. Nothing in the record indicates that this testimony was false. The case report on which Youngs relies indicates that Tawny Felzke may have provided Willis with some general information about what Youngs told her brother. However, Willis testified about a number of details not mentioned in the case report, including Youngs's interaction with his parole officer, Youngs's lies to the officer, what Youngs had done to his truck and cell phone, his actions in trying to remove incriminating evidence, and information about the agreement with Rummell to try to convince Lacina to falsely claim that $5,000 had been stolen. The prosecutor, and even Youngs's lawyer, could have asked more follow-up questions to allow the jury to determine what specific information Tawny Felzke may have actually provided to Willis. However, the prosecutor's failure to further inquire into testimony that has not been proven to be false does not constitute

misconduct. Accordingly, because the record does not clearly establish
that Willis lied about obtaining his knowledge of the offense from
Youngs, we reject this claim of error.

*Youngs*, 2017 WL 430234 at *7.

The state court's decision is neither contrary to Supreme Court precedent nor
an unreasonable application of federal law or the facts.  First, Petitioner fails to
establish that the prosecution knowingly presented false testimony.  At trial, Willis
described various details of the crime and Petitioner's attempts to evade
responsibility and explained that Petitioner provided that information to him when
they shared a jail cell for two weeks.  ECF No. 7-5, PageID.509-529.  Willis
admitted that he spoke to his girlfriend, Tawny Felske, about Petitioner, but stated
that he did not obtain detailed information from her because he did not want it to be
third-party information.  *Id*. at PageID.529-530.  On cross-examination, Willis
testified that Tawny Felske visited him every week in jail, but he did not discuss the
case with her.  *Id*. at PageID.540.  On re-cross, Willis clarified that Tawny Felske
spoke to him about Petitioner, but did not give him the information that he provided
at trial.  *Id*. at PageID.540-541.  The report of Tawny Felzke's police interview
indicates that she gave Willis brief information about the crime based upon
information from her brother Jerry Felzke, namely telling Willis that Petitioner broke
into the victim's residence believing that he would be up north, stole some things,

18

and beat him.  ECF No. 7-9, PageID.1129.  Thus, a review of the record does not indicate that Willis testified falsely at trial.  Any inconsistencies in Willis' testimony or variations from Felzke's interview statements do not establish that the prosecution knowingly presented false testimony.  The fact that a witness contradicts himself or changes his story does not establish perjury, *see, e.g., Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003), and mere inconsistencies in a witness's testimony do not establish the knowing use of false testimony by a prosecutor.  *Coe*, 161 F.3d at 343.  Petitioner fails to show that the prosecutor knowingly presented, or failed to correct, materially false testimony.

Second, Petitioner fails to establish that the prosecutor engaged in misconduct during closing arguments.  During closing arguments, the prosecutor recounted Willis' testimony and argued that he obtained the detailed information about Petitioner's involvement in the crime and his attempts to avoid getting caught from Petitioner himself.  *See* ECF No. 7-7, PageID.830-835.  Such argument was based upon Willis' own testimony and reasonable inferences therefrom.  While prosecutors may not misstate the evidence, *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001), or argue facts not in evidence, *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004), they can make arguments based upon the evidence and have "'leeway to argue reasonable inferences from the evidence' during closing arguments."  *United*

*States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)).  Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief.  *Portuondo v. Agard*, 529 U.S. 61, 69 (2000); *Cristini v. McKee,* 526 F.3d 888, 902 (6th Cir. 2008).  Such was the case here.  The prosecutor's argument was based upon Willis' testimony, other testimony presented at trial, and reasonable inferences from that evidence.  Petitioner fails to show that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair.  Habeas relief is not warranted on these claims.

### 3.    Ineffective Assistance of Counsel Claims

Lastly, Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for making a mid-trial strategy change regarding his testimony, endorsing Lakendric Willis' testimony in opening statements and failing to impeach him with evidence, concurring with the prosecution's striking of certain witnesses, failing to investigate and produce defense evidence, not objecting to the use of perjured testimony, and failing to request disputed accomplice and mistake of fact jury instructions.  Respondent contends that these claims lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for

determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."  *Id*. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding.  *Id*.  "On balance, the benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Harrington*, 562 U.S. at 105 (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id*.

The Michigan Court of Appeals denied relief on these claims.  The court explained:

> Youngs argues that his lawyer was ineffective for not requesting a "mistake-of-fact" instruction concerning whether Youngs mistakenly believed that Lacina had consented to the breaking and entering as part of Lacina's plan to commit insurance fraud. We disagree.
>
> The defense of mistake-of-fact requires, in part, that the mistake relate to facts and not the law, and that the mistake be honest and reasonable. 21 Am. Jur. 2d, Criminal Law, § 152, pp. 232–233. "'A mere belief, unsupported by a showing of due care and bona fide, reasonable effort to ascertain the facts, is insufficient to constitute a mistake of fact

defense.'" *People v. Quinn*, 440 Mich. 178, 196; 487 N.W.2d 194 (1992), quoting *People v. Dillard*, 154 Cal. App. 3d 261, 266; 201 Cal. Rptr. 136 (1984). In this case, the evidence did not support a finding that Youngs acted in a mistaken manner. Rummell testified that she gave Youngs the impression that Lacina was aware of their plans and that Lacina intended to make a false insurance claim. However, no evidence was presented showing that Youngs actually believed Rummell or that he acted with due care in determining whether the assertion was true. Instead, the evidence established that Youngs tried to keep Lacina from returning home, then assaulted him when he arrived at the home while Youngs was still there. Thus, the evidence supports the inference that Youngs did not believe that Lacina knew about Rummell's plan or was involved in it, and is inconsistent with any alleged belief by Youngs that Lacina was aware of the planned break-in. Because a mistake-of-fact defense was not available to Youngs on the basis of the evidence presented, his lawyer was not ineffective for failing to request a jury instruction on that defense. *People v. Gonzalez*, 468 Mich. 636, 645; 664 N.W.2d 159 (2003).

Youngs also argues that his lawyer was ineffective for not requesting a disputed accomplice instruction, M Crim JI 5.5, to be given along with M Crim JI 5.6, with respect to Lacina's testimony. These instructions would have required the jury to decide whether Lacina was an accomplice to the offenses, and if so, to consider his testimony closely and with careful scrutiny.

As defined by M Crim JI 5.5, an "accomplice" must "knowingly and willingly help[ ] or cooperate [ ]" in the commission of the crime. While testimony was presented that Lacina considered taking advantage of the crimes by falsely claiming after the offenses that $5,000 had been stolen, no evidence supported a finding that Lacina played a role in the commission of the offenses or had prior knowledge that the offenses would be committed. Although Rummell testified that she told Youngs that Lacina wanted the break-in to occur, she repeatedly stated that this was a lie and that Lacina played no part in planning the break-in. Willis also testified that nothing Youngs told him indicated that Lacina was involved in the break-in. Nor did any testimony support an accomplice instruction concerning Youngs's assault on Lacina. Although Youngs

23

points to inaccuracies in Lacina's testimony concerning the details of the type of truck driven by his assailant and his assailant's height, these inaccuracies do not establish support for a disputed accomplice instruction. Moreover, Youngs ignores the import of the fact that Lacina was severely assaulted when he returned to his house. The severity of the assault against Lacina is completely at odds with any notion that Lacina was a party to the planned break-in. Accordingly, the evidence did not support a separate accomplice instruction with respect to Lacina, and therefore, Youngs was not prejudiced by his lawyer's failure to request the instruction.

* * *

Youngs's asserts that his trial lawyer was ineffective for failing to object to the prosecutor's conduct discussed above. Having concluded that the prosecutor's conduct was not improper, it follows that his trial lawyer was not ineffective for failing to object. *Goodin*, 257 Mich. App. at 433. To the extent that an objection might have been appropriate with respect to the "patsy" comments, because Youngs was not prejudiced by those isolated remarks, he cannot demonstrate a reasonable probability that, but for his lawyer's failure to object, the outcome of the proceeding would have been different.

Youngs also argues that his trial lawyer was ineffective for telling the jury during opening statement that Youngs would testify, and then frightening Youngs into not testifying during trial by "ominously" warning him that the prosecution would possibly "[tear] him to shreds, making him out to be a monster, and eliciting all sorts of horrible things." We disagree.

A criminal defendant has a fundamental constitutional right to testify at trial. U.S. Const., Am. XIV; Const. 1963, art. 1, §§ 17, 20. The decision to testify or not to testify is a strategic one "best left to an accused and his counsel." *People v. Martin*, 150 Mich. App. 630, 640; 389 N.W.2d 713 (1986). "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v. Bonilla–Machado*, 489 Mich. 412, 419; 803 N.W.2d 217 (2011). "If the accused expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objection." *People v. Simmons*, 140 Mich. App. 681, 685; 364 N.W.2d 783 (1985). "[I]f

defendant ... decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *Id.* (citation omitted).

There is no basis in the record for concluding that Youngs's lawyer deprived Youngs of his constitutional right to testify. The record contains no indication that Youngs expressed to his lawyer a desire to testify and that his lawyer somehow "forced" or "coerced" him into forgoing that right. On the contrary, after the prosecution rested, Youngs's lawyer stated on the record that he and Youngs had discussed whether Youngs would testify, that Youngs was advised of his right to testify or not testify and the possible consequences of testifying, that his lawyer had "left the final decision up to" Youngs, and that Youngs had decided not to testify. The court also questioned Youngs as to whether he had discussed this with his lawyer; Youngs replied that he had and stated that it was his decision not to testify. Youngs never expressed disagreement with his lawyer's statement that he did not wish to testify, did not claim that he was ignorant of his right to testify, and did not claim that his lawyer had coerced him into not testifying. Accordingly, the record does not support Youngs's claim that his lawyer was ineffective in this regard.

Finally, because Youngs has not demonstrated multiple errors by his trial lawyer, he cannot show that he is entitled to relief due to the cumulative effect of his lawyer's deficient conduct. *See People v. Gaines*, 306 Mich. App. 289, 310; 856 N.W.2d 222 (2014) ("[O]nly 'actual errors' are aggregated when reviewing a cumulative-error argument.").

*Youngs*, 2017 WL 430234 at *4, 9 (footnote omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[2] First, with respect to

---

[2]The Court notes that it would reach the same result under a de novo standard of review. The parties and the record indicate that the Michigan Court of Appeals did not specifically address some of Petitioner's distinct ineffective assistance of counsel claims. Because there was no state court ruling on those issues, the Court conducted a de novo review of those claims.

Petitioner's decision not to testify at trial, it is well-established that a criminal defendant has a constitutional right to testify on his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 52-53 & n. 10 (1987); *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir. 1997). Nonetheless, "a 'barebones assertion by a defendant, [even one] made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary ... to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.'" *McCoy v. Bock*, 2003 WL 22994984, *11 (E.D. Mich. Dec. 17, 2003) (Lawson, J.) (quoting *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991), and citing *Chang v. United States*, 250 F.3d 79, 84-85 (2nd Cir. 2001); *Sciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987)).

In this case, Petitioner makes only a bald assertion that trial counsel scared him into not testifying at trial by telling him that the prosecution would tear him apart on cross-examination. Petitioner does not allege facts to show that he was misled or believed that he was not allowed to testify. Defense counsel's role is to advise the defendant whether to take the stand, but it is for the defendant, ultimately, to decide. *See United States v. Webber*, 208 F.3d 545, 550-51 (6th Cir. 2000) (citing cases). A defendant must "alert the trial court" that he or she desires to testify or that

there is a disagreement with counsel about whether he or she should take the stand.

Waiver is presumed from the defendant's failure to testify or notify the trial court of

the desire to do so. *Id*. at 551. Petitioner did not testify nor notify the trial court of

his desire to do so during trial. Rather, he confirmed that he consulted with counsel

about the pros and cons of testifying on his own behalf, acknowledged that it was his

decision, and waived his right to testify on the record. *See* ECF No. 7-6,

PageID.819-820.

Petitioner nonetheless asserts that counsel was ineffective for telling the jury

during opening statements that he would testify at trial and then scaring him into not

doing so. The breach of an important promise in an opening statement, such as the

promise that a witness or a defendant will testify, may amount to deficient

performance. *See, e.g., English v. Romanowski*, 602 F.3d 714, 729 (6th Cir. 2010).

But counsel's failure to fulfill a promise made in an opening statement "is not often a

successful basis for an ineffective assistance of counsel claim." *Smith v. Rewerts*,

No. 17-CV-13614, 2018 WL 4637342, *9 (E.D. Mich. Sept. 27, 2018) (citing cases).

Moreover, *English* makes clear that ineffective assistance of counsel exists when

counsel fails to reasonable investigate the basis for the promise, not for merely

making the unfulfilled promise. *English*, 602 F.3d at 729.

In this case, Petitioner fails to establish that counsel's performance was

deficient and/or that he was prejudiced by counsel's conduct. Well-established

federal law requires that defense counsel conduct a reasonable investigation into the

facts of a defendant's case, or make a reasonable determination that such

investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at

691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*,

395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation

to investigate all witnesses who may have information concerning . . . guilt or

innocence." *Towns*, 395 F.3d at 258. That being said, decisions as to what evidence

to present and whether to call certain witnesses are presumed to be matters of trial

strategy. When making strategic decisions, counsel's conduct must be reasonable.

*Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-

23. The failure to call witnesses or present evidence constitutes ineffective

assistance of counsel only when it deprives a defendant of a substantial defense.

*Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*,

303 F.3d 720, 749 (6th Cir. 2002).

   The record indicates that trial counsel conducted a significant pre-trial

investigation into Petitioner's case. Counsel's billing records indicate that he

reviewed the prosecution's files, police interviews, and reports, listened to hours of

jail audio and phone calls, investigated potential witnesses, and consulted with

Petitioner several times before trial.  ECF No. 1, PageID.99.  Given this

investigation, counsel may have initially thought it would be prudent for Petitioner

to testify at trial, but then reasonably determined mid-trial that it was not necessary

for Petitioner to do so given the lack of physical evidence linking him to the crime,

the weaknesses in the prosecution's case, and his own questioning of the victims and

witnesses, as well as the inherent risks of cross-examination.  Moreover, as

explained *supra*, Petitioner and counsel discussed whether Petitioner should testify.

After their discussion, Petitioner decided not to testify and his decision was placed

on the record.  Petitioner did not  indicate that he was frightened or coerced into

waiving his right to testify.  Trial counsel's advice and conduct was reasonable under

the circumstances.

Additionally, even assuming that counsel erred by indicating during his

opening statement that Petitioner would testify at trial, Petitioner fails to establish

that he was prejudiced by such conduct.  Petitioner was aware of counsel's opening

remark (which was brief), discussed the pros and cons of testifying with counsel, and

still chose not to testify.  Counsel was able to cross-examine the victims and the

other witnesses and highlight inconsistencies in their testimony and to argue

reasonable doubt/an alternate theory of events as a defense to the charges without

Petitioner's testimony.  Petitioner was thus not deprived of a substantial defense at

trial.  Moreover, given the significant evidence of guilt presented at trial, including the testimony of Lakendric Willis and Jamie Rummell, Petitioner fails to show that counsel's opening statement affected the outcome at trial.  He thus fails to establish that counsel was ineffective in this regard.

Second, as to trial counsel's "endorsement" of Lakendric Willis' testimony in opening statements by conceding that Petitioner made statements to Willis (about $5,000 not being taken) and his failure to attack Willis' credibility with documentary evidence (police reports of interviews with Tawny and Jerry Felzke), Petitioner fails to show that counsel erred and/or that he was prejudiced by counsel's conduct.  As to counsel's opening statement, the remark was brief, *see* ECF No. 7-5, PageID.398, was made in response to the prosecutor's more lengthy discussion of the issue, *id.* at PageID.393-394, and was made in the context of criticizing the police investigation and the prosecution witnesses' version of events.  *Id*. at 398-399.  Given such circumstances, counsel's opening statement remark was reasonable.  Petitioner fails to establish that counsel was ineffective.

As to the cross-examination of Willis, it is well-settled that the cross-examination of witnesses is generally a matter of trial strategy left to the professional discretion of counsel.  *See Jackson v. Bradshaw*, 681 F.3d 753, 765 (6th Cir. 2012) (stating that "most cross-examinations can be improved but if that were

the standard of constitutional effectiveness, few would be the counsel whose performance pass muster" and citing cases).  The record in this case indicates that counsel reviewed the Felzke police reports, ECF No. 1, PageId.86-87, and reviewed multiple recordings of jail audio and phone calls involving Willis and others.  *Id*. at PageID.99.  Given such action, counsel may have reasonably determined that cross-examining Willis about the source of his information would not be beneficial to the defense because the police report indicates states that Tawny Felzke only gave Willis "brief information" about the crime and did not include much of the detailed information that he provided at trial.  Additionally, the police report indicates that Jerry Felzke obtained information about the crime directly from Petitioner thereby providing more inculpatory evidence against him.  Counsel's decision not to delve into such matters on cross-examination was reasonable.  The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002).  Petitioner fails to establish that counsel was ineffective.

Third, with regard to counsel's stipulation to the prosecution's request to strike two witnesses, Tawny and Jerry Felzke, Petitioner similarly, and for the same reasons discussed *supra*, fails to show that counsel's decision was not a matter of sound trial strategy.  Counsel may have reasonably determined that testimony from

those witnesses would not benefit the defense case and could, in fact, provide more incriminating evidence to support the prosecution's case.  Petitioner fails to establish that counsel was ineffective.

Fourth, as to counsel's alleged failure to investigate and produce testimony vital to the defense, i.e., his failure to interview Lakendric Willis, Tawny Felzke, and Jerry Felzke before trial, Petitioner fails to show that counsel erred and/or that he was prejudiced by counsel's conduct.  As discussed *supra*, the record indicates that counsel reviewed the prosecution's file, the police reports, and Willis' jail audio and phone recordings before trial.  Counsel was thus well aware of the witnesses' knowledge of the crime and their potential testimony, and he may have reasonably decided that interviewing them before trial was unnecessary.

Moreover, Petitioner fails to establish that he was prejudiced by counsel's conduct.  He fails to show what more counsel would have discovered through interviews with these individuals which would have benefitted his defense.  As noted, conclusory allegations are insufficient to warrant federal habeas relief.  *See Cross*, 238 F. App'x at 39-40; *Workman*, 178 F.3d at 771; *see also Washington*, 455 F.3d at 733.  Petitioner fails to establish that counsel was ineffective.

Fifth, with respect to counsel's failure to object to the alleged instances of false testimony/prosecutorial misconduct, Petitioner fails to show that he is entitled

to relief.  Given the Michigan Court of Appeals' decision and this Court's ruling that the prosecution did not engage in such misconduct, however, Petitioner cannot establish that counsel erred and/or that he was prejudiced by counsel's conduct. Counsel cannot be deemed deficient for failing to make a meritless argument or a futile objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Petitioner fails to establish that counsel was ineffective.

Sixth, as to counsel's failure to request "disputed accomplice" and "mistake of fact" jury instructions, Petitioner fails to show that he is entitled to relief.  The Michigan Court of Appeals determined that such instructions were not supported by the evidence and were not warranted as a matter of state law.  *See Youngs*, 2017 WL 430234 at *4.  It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).  State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).   Given that state law determinations are entitled to deference on habeas

review, Petitioner cannot establish that counsel erred and/or that he was prejudiced by counsel's conduct in failing to request the instructions. As noted, counsel cannot be deficient for failing to make a meritless request. *Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225. Petitioner fails to demonstrate that counsel was ineffective.

Lastly, Petitioner asserts that he is entitled to relief due to the cumulative effective of trial counsel's alleged errors. The Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). The Sixth Circuit has ruled that such a cumulative error claim is not cognizable on habeas review. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *see also Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012) (ruling that trial counsel cumulative error claim was not cognizable and citing *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010), and *Moore*). Petitioner thus fails to state a claim upon which relief may be granted as to this issue. Moreover, given that his ineffective assistance of counsel claims lack merit, he cannot establish that he is entitled to relief based upon cumulative error. In sum, Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

## V.    <u>Conclusion</u>

For the reasons stated, the Court concludes that Petitioner is not entitled to

habeas relief on his claims.  Accordingly, the Court **DENIES** and **DISMISSES**

**WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue.  *See* 28

U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may

issue only if a petitioner makes "a substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the

merits, the substantial showing threshold is met if the petitioner demonstrates that

reasonable jurists would find the court's assessment of the claim debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  The Court concludes that

Petitioner fails to make a substantial showing of the denial of a constitutional right as

to his claims.  Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken

in good faith.  *See* FED. R. APP. P. 24(a).  Accordingly, the Court **DENIES** leave to

proceed in forma pauperis on appeal.  This case is **CLOSED**.

**IT IS SO ORDERED**.


Dated:  April 22, 2021                         s/Paul D. Borman
                                               Paul D. Borman
                                               United States District Judge